IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOSEPH EDDIE TILLMAN, R40962,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-CV-33-SMY- |
| | ) |
| **MICHAEL ATCHISON, RICHARD HARRINGTON, MAJOR HASEMEYER, and BARBARA MUELLER,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

On October 29, 2013, Plaintiff Joseph Tillman, an inmate currently incarcerated at Menard Correctional Center ("Menard"), filed this lawsuit against Defendants Michael Atchison, Richard Harrington, Major Hasemeyer and Barbara Mueller alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. On December 9, 2013, Tillman's claims were screened pursuant to 28 U.S.C. § 1915A and he was permitted to proceed on the following counts:

**Count 1:** Eighth Amendment claim for unconstitutional conditions of confinement.

**Count 2:** Fourteenth Amendment claim for denying Plaintiff a hearing on [a] disciplinary report that resulted in Plaintiff's placement in segregation.

Defendants have moved for summary judgment (Doc. 53). For the following reasons, Defendants' motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

When presented with a motion for summary judgment the Court must view the facts in "the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369

1

U.S. 654, 655 (1962). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). With this standard in mind, the Court turns to the facts of this case.

The events that give rise to this litigation began in late 2012 while Tillman was housed at Stateville Correctional Center ("Stateville"). On September 30, 2012, Tillman placed a telephone call to his wife wherein Tillman remarked "the Counselor just told me that they might transfer me soon but I am not going anywhere. I am probably going to seg… I am probably going to beat someone up or something… I really don't want to go to a medium joint" (Doc. 1-2, p. 37). The telephone call was deemed to be of a "threatening" nature (prisoner telephone calls are recorded) and on October 12, 2012, Tillman was placed on investigative status by Stateville administration (Doc. 1-2, p. 37).

Later that month, it was decided that Tillman would be transferred from Stateville to Menard (Doc. 54-13). Tillman arrived at Menard on November 1, 2012 and was immediately placed in Administrative Detention (Doc. 54-1, p. 7). Although he was now at Menard, Stateville staff had not forgotten about Tillman's telephone call, and on December 11, 2012, Tillman was issued a Disciplinary Report charging him with making a threatening phone call and for being associated with a Security Threat Group (the Gangster Disciples) (Doc. 1-2, p. 39). The Disciplinary Report states that information for the Security Threat Group charge was provided by confidential informants at Stateville. *Id.*

On December 20, 2012, an Adjustment Committee hearing was held at Menard for the disciplinary charges (Doc. 1-2, p. 40). Tillman plead not guilty. *Id.* Tillman also stated at the hearing that he had been on investigative status for "too long" and that the "ticket was written

2

late." *Id.* At the conclusion of the hearing, the Adjustment Committee found Tillman guilty and decided that he would be punished with one year of "C-Grade," one year of segregation, a one year commissary restriction and a six month contact visits restriction. *Id.* Warden Atchison signed off on the decision and Tillman received notice of it on January 3, 2013. *Id.*

Tillman then appealed the Adjustment Committee decision to the IDOC Administrative Review Board ("ARB") (Doc. 140). Eight months later, the ARB reviewed the appeal and decided to expunge the disciplinary charges. *Id.* In a somewhat oddly worded letter dated September 26, 2013, the ARB notified Tillman that the disciplinary charges would be expunged. *Id.* Warden Harrington signed off on the expungement on October 1, 2013 (Doc. 1-2, p. 41).

In June 2013, while Tillman was waiting for the ARB to respond to his appeal, he received another disciplinary charge for Security Threat Group (gang) related activity (Doc. 54-1, p. 43). Tillman stated at his deposition that he received this second disciplinary charge because he was accused of sending a letter of "STG nature" to another inmate at Menard. As a result, Tillman was disciplined with one year of segregation (Doc. 54-1, p. 44).

Inmates housed in Administrative Detention, such as Tillman, are kept separate from those housed in general population. Defendant Chad Hasemeyer served as the Administrative Detention unit supervisor from December 2012 to June 2013. (Haseyemer declaration, Doc. 54-7). Hasemeyer states in a declaration that:

> Administrative detention is a non-disciplinary status wherein an inmate is separated from the general population in order to maintain the safety and security of the institution. During my time as the Major for Administrative Detention unit, from December 2012 to June 2013, the Warden of the institution would consult the Major, the Intelligence unit, and the Internal Affairs unit to determine whether an inmate should be placed in Administrative Detention. The inmate was not consulted regarding the placement, as the placement was administrative and non-disciplinary (Doc. 54-7, p. 1-2).

Hasemeyer notes that inmates may be on both Administrative Detention and Disciplinary Segregation status (Doc. 54-7, p. 1).

Additionally, according to Hasemeyer, the procedures for Administrative Detention placement changed in 2014 (Doc. 54-7, p. 2). The 2014 changes mandate that an Adjustment Committee holds an initial placement hearing which the inmate has the opportunity to attend. *Id.* An Adjustment Committee is then held every 90 days to determine whether the inmate should remain in Administrative Detention. *Id.* The inmate may attend a committee meeting every 180 days. *Id.* (i.e., every other meeting).

In sum, Tillman was placed on investigative status at Stateville from October 12, 2012 through November 1, 2012. Upon arriving at Menard, he was placed in Administrative Detention from November 1, 2012 through December 20, 2012. Following the December 20, 2012 Adjustment Committee hearing, Tillman was placed in Administrative Detention segregation.[1] Tillman remained in Administrative Detention segregation until December 5, 2014 (Doc. 54-1, p. 66). Tillman was then placed back into Administrative Detention segregation on May 13, 2015. (Doc. 54-1, p. 67).

In addition to the issues regarding due process and his classification status, Tillman alleges that the housing conditions in the Administrative Detention unit violated his Eighth Amendment rights (Doc. 1). When Tillman arrived at Menard on November 1, 2012, his cell lacked heat and hot water (Doc. 54-1, p. 16). Many of the windows in the unit were either broken or would not entirely close. *Id.* The Menard correctional officers were aware of these problems and provided tape and plastic sheeting to seal the windows. *Id.* Inmates were also provided with an additional blanket and allowed to wear gray jogging suits, which could be purchased from the

---

[1] At his deposition Tillman stated that he was placed in segregation on December 17, 2012. (Doc. 54-1, p. 66).

4

prison commissary. *Id.* Tillman filed multiple grievances regarding these issues, including an emergency grievance submitted to Warden Atchison on December 16, 2012 (Doc. 1-1, p. 21).

Correctional officers did monitor the temperature of the North 2 Cellhouse B and C Wings (the units where Tillman was located) (Doc. 54-16). The recorded temperatures typically fluctuated between 70 and 80 degrees Fahrenheit. However, it is unclear whether the recorded temperatures accurately reflect the temperatures inside the individual cells. *Id.* Additionally, there were intermittent periods where there was heat in Tillman's cellhouse (Doc. 54-1, p. 20). The heating problem became less of an issue as Tillman entered the spring and summer months in 2013.

The hot water problem manifested itself in two ways. Tillman took cold showers (or at most lukewarm, see Doc. 60, p. 4) and he did not have access to hot water in his cell (Doc. 54-1, p. 13). Tillman testified at his deposition that "in our cells there's a sink with a hot water and a cold water button. Whenever you press the hot water button, only cold water comes out." *Id.* Correctional staff told Tillman that hot water would flow if he held the hot water button down for an extended period of time, but Tillman was unsuccessful in this effort. *Id.* Tillman also showered in cold water and due to his Administrative Detention disciplinary segregation status, he generally only received one shower a week. (Doc. 54-1, p. 65).

Tillman testified at his deposition that these conditions caused him to develop lichenoid dermatitis, which is a type of skin rash (Doc. 54-1, p. 28). He began to experience the condition in October, 2013. *Id.* He was prescribed ointment for the rash in March, 2014 and it cleared up not long after (Doc. 54-1, p. 12). Tillman's treating physician at Menard told him that he did not know what caused lichenoid dermatitis (Doc. 54-1, p. 18).

The Menard administration was aware of the heating and water problems prior to Tillman arriving at the facility. Steve Wallace is the Chief Engineer and Maintenance Supervisor at Menard. (Doc. 54-2, p. 1). Wallace states in a declaration that on October 31, 2012, a work order was submitted regarding the hot water and heating issues. *Id*. It was later determined that a part needed to be ordered to correct the heating issue and an outside contractor was needed to fix the hot water problem (the contract was also competitively bid) (Doc. 54-2, p. 2). The heating project was completed on May 14, 2013 and the outside contractor completed the hot water project in October, 2013. *Id.*

Tillman proceeds in this case against four defendants. Defendant Barbara Mueller served as Tillman's counselor in the Administrative Detention unit (Doc. 54-1, p. 85). As an IDOC counselor at Menard, Mueller would walk the galleries and speak to the inmates (Doc. 54-15, p. 1). As part of her duties, Mueller would respond to inmate grievances, including those submitted by Tillman (Doc. 54-15, p. 2). Mueller responded to Tillman' grievances from November 2012 through early 2013. *Id.* She forwarded maintenance issues to the Menard maintenance staff but she did not have the authority to move or transfer inmates. *Id.*

Defendant Chad Hasemeyer held the rank of Major and oversaw the Menard Administrative Detention unit from December 2012 to June 2013 (Doc. 54-7). It is unclear from the record if and/or when Tillman and Hasemeyer ever communicated with one another.

Defendant Atchison was the Warden of Menard upon Tillman's arrival at the facility (Doc. 54-1, p. 96). Atchison deemed Tillman's December 16, 2012 grievance to be an "emergency" grievance (Doc. 1-1, p. 21). Atchison transferred to another position in the IDOC in January of 2013 (Doc. 54-1, p. 96).

Defendant Harrington was the Menard Warden following Atchison's departure (Doc. 54-1, p. 96). It is unclear from the record whether Warden Harrington received any grievances from Tillman regarding his cell conditions or the extent of his involvement in the maintenance issues.

## DISCUSSION

All four Defendants move for summary judgment on both Counts of Tillman's Complaint. "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal cite and quote omitted). Rule 56(a) of the Federal Rules of Civil Procedure provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The facts and reasonable inference must be drawn in a light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Summary judgment cannot be used to resolve swearing contests between litigants." *Id.*

### Count 1 - Conditions of Confinement

In Count 1 of his Complaint, Tillman asserts that the defendants violated his Eighth Amendment rights by failing to improve the conditions in the Administrative Detention unit (or transfer him somewhere else). The Supreme Court has established a two part test to determine whether a prison official has violated a prisoner's rights under the "cruel and unusual punishment" clause of the Eighth Amendment. First, the conditions must be "sufficiently serious," or stated in another way, the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal cite and quote omitted). Second, "a prison official must have a sufficiently

7

culpable state of mind" consisting of "deliberate indifference to inmate health or safety." *Id.* (internal cite and quote omitted).

Under the Eighth Amendment, prisoners are entitled to adequate shelter and protection from extreme cold. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). There is no bright line test for determining whether a prisoner's cell is so cold as to violate the Eighth Amendment. However, the Seventh Circuit Court provides some guidance on this issue:

> Taken as a whole, the cases suggest courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.

*Id.* at 644. In *Dixon,* the prisoner plaintiff was held to have stated an Eighth Amendment claim when he suffered through three winters of near freezing temperatures in his cell with only the standard issue prison clothing and bedding. *See also Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (qualified immunity denied for Stateville correctional officers who did not provide additional bedding or clothes to prisoners when temperature dropped below freezing for four days in cell house); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (pretrial detainee kept in cell for week and a half without bedding, clothes or heat in the middle of November stated conditions of confinement claim); *Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (genuine dispute of material fact as to prisoner's Eighth Amendment claim where for five days prisoner was kept completely naked, all of his bedding was removed, prisoner was fed only "nutraloaf," and cell kept at 70 degrees); *cf. Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (failure to issue prisoner winter underwear, boots, galoshes, and other cold weather items did not violate Eighth Amendment).

In this case, there exists a genuine dispute of material fact as to whether Tillman's Eighth Amendment rights were violated. Tillman arrived at Menard on November 1, 2012 and was placed in a cold drafty cell in a unit with a broken heating system. He suffered through the cold until the weather became warmer the following spring. The defendants' attempts at improving the situation (such as trying to fix the heating and water lines, providing additional bedding and clothing, and sealing the windows) provided little relief. Moreover, Tillman spent little time outside his cell because he was in Administrative Detention disciplinary segregation. Viewing such facts in a light most favorable to Tillman, a reasonable jury could conclude that such conditions were objectively serious and that Tillman was denied the "minimal civilized measure of life's necessities."

Defendants argue that Tillman's claim fails because he did not provide evidence of the precise temperatures in his cell. Defendants also urge the Court to disregard the hot water claim because prisoners do not have an Eighth Amendment right to hot water. Defendants are correct in that the Supreme Court and the Seventh Circuit have not recognized a stand-alone Eighth Amendment right to hot water. See *Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014). However, Tillman's lack of hot water may be considered in support of his overall low cell temperature claim. *Dixon*, 114 F.3d at 642. As for the actual cell temperatures, Tillman was not allowed a thermometer in his cell. As such, it not reasonable to expect that he provides specifics. Tillman's testimony is sufficient to create a material issue of fact.

The next issue is whether the defendants were deliberately indifferent to Tillman's situation. Tillman's Eighth Amendment claim, like all lawsuits against individuals brought under § 1983, require the defendants' personal involvement. "Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable

9

way in the alleged constitutional violation." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Here, there is evidence in the record demonstrating that Mueller and Hasemeyer were aware of the problems in the Administrative Detention unit. Mueller was Tillman's counselor and responded to his many grievances regarding the cell conditions issue. Hasemeyer admitted in his declaration that he was aware of the hot water and heating problems. Hasemeyer and Mueller shall therefore be denied summary judgment on Tillman's Eighth Amendment claim.

It's less clear whether Warden Atchison and Warden Harrington had the requisite knowledge concerning the conditions in the Administrative Detention cells. Warden Atchison did review Tillman's December 16, 2012, emergency grievance, however neither Warden Atchison nor Harrington is specifically mentioned in the section of the Defendants' motion for summary judgment that addresses Tillman's conditions of condition of confinement claim. With such a scant record on this issue and little discussion in the Defendants' motion, summary judgment would be inappropriate for these Defendants.

The last issue in regards to Tillman's Eighth Amendment claim is Defendants' argument that they are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). In this case, the defendants' qualified immunity argument is without merit. In *Henderson v. DeRobertis* the Seventh Circuit was confronted with a similar qualified immunity question and held that prisoners have had a clearly established right under the Eighth Amendment to "adequate heat and shelter" since 1982. 940 F.2d 1055, 1059 (7th Cir. 1991). Based on the foregoing discussion, whether Tillman's

Eighth Amendment rights were violated is a question for the jury and summary judgment is not appropriate as to Count 1.

### Count 2 - Due Process

In Count 2 of his Complaint, Tillman claims that Defendants violated his Fourteenth Amendment Due Process rights. "Segregated confinement may trigger a liberty interest, and thereby due process protections, if the length is substantial or the conditions are unusually harsh." *Means v. Larson*, 580 F. App'x 481, 482 (7th Cir. 2014). Generally, placement in administrative segregation or placement for brief periods in disciplinary segregation does not implicate a due process liberty interest. See *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days in segregation at Stateville did not give rise to liberty interest); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (placement in administrative segregation for 59 days did not give rise to liberty interest); *Castillo v. Johnson*, 592 F. App'x 499 (7th Cir. 2014) (two month period at Tamms "Supermax" facility too short to create a liberty interest).

The thrust of Tillman's claim appears to be that because he was on both Administrative Detention and disciplinary segregation status (for the majority of his time at Menard), he should have received separate hearings for both. Tillman was placed on investigative status at Stateville on October 12, 2012. He was then transferred to Menard on November 1, 2012 and placed in Administrative Detention. On December 20, 2012 Tillman received a disciplinary hearing for his threatening phone call and Security Threat Group charges. Warden Atchison approved the disciplinary hearing's decision shortly thereafter. Tillman was therefore placed in investigative status and Administrative Detention *without a hearing* from October 12, 2012 to December 20, 2012 - approximately 69 days. At Tillman's deposition he testified that he remained on Administrative Detention disciplinary segregation status until December 5, 2014.

Such a period, under Tillman's circumstances is insufficient to give rise to a liberty interest. Although the disciplinary charges from the December 20, 2012 hearing were later withdrawn, there is no indication that any due process violations occurred. See *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006); *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). And while an extended stay in the Menard Administrative Detention unit is arguably an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life', *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483) giving rise to a liberty interest, there is little if any difference between the conditions in the Menard Administrative Detention segregation unit and the general population segregation unit. Thus, Tillman was afforded the necessary due process through his disciplinary hearings. Because there is no issue of material fact as top whether a due process violation occurred, the Court need not address Defendants' argument for qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Defendants Atchison and Harrington on Count 1; **DENIED** as to Defendants Hasemeyer and Mueller on Count 1; and **GRANTED** as to all Defendants on Count 2. Accordingly, Plaintiff shall proceed solely on Count 1 against Defendants Hasemeyer and Mueller.

**IT IS SO ORDERED.**

**DATED:  July 13, 2016**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
